The first case for argument is Case 23-3579, Western District of Arkansas, Gary Smith v. Warden Jeffie Walker, et al. May it please the Court, my name is Jeffrey D. Kearney and I represent Appellant Gary Smith in this matter. I wish to reserve two minutes for rebuttal. Mr. Smith seeks review of the Grants and Summary Judgment on his failure to protect claims against Miller County Detention Center Warden Jeffie Walker and Correctional Sergeant Robbie Golden. Though the District Court held that there was sufficient evidence of the risk presented by his cellmate, Mr. Anderson, the Court ultimately determined that there was insufficient evidence of a genuine issue of material fact as to the knowledge held by those individuals. And as to the warden, there was no evidence of sufficient involvement in the matter. Just by a brief way of factual overview, Mr. Smith was sexually assaulted by a cellmate with whom he'd been housed for about two or three days in confinement after an incident at a hospital. He was knocked out, woke up, and found himself bound with anal pain and other pain associated with rape and was determined to have been raped by Mr. Anderson. Mr. Anderson was in jail for awaiting pre-trial, he was there on pre-trial detention awaiting trial for a rape case. He had a host of disciplinaries during his time there and so the basis of the claim is that there was, additionally there was evidence from, that Mr. Golden was attempting to reprise against Mr. Smith based on the incident at the hospital, suggesting deliberate indifference. You know, on that statement, what was it, now you won't have an alibi or have no alibi, I read that a little differently and I'm not sure that there's a good argument to the contrary, which is to say that I think what he was saying was to him, hey, earlier today you bumped into the officer or assaulted an officer and your excuse was, your alibi was, hey, I was on pain medication, now that I'm putting you in solitary confinement you're going to be watched all the time so you can't do something like that again and get away with it. That's the way, that was the only reasonable way I could read that statement. If that's true, that doesn't necessarily suggest reprisal. So your honor, I do agree that that is a reasonable reading of what he stated, but I don't think that it is conclusive as to that point. I mean, first off, in the statement of facts, in his declaration, Mr. Smith stated when he told him, he also said, pardon my language, you fucked up now. And he said that that was stated in a threatening manner. You won't have any alibi. It's conceivably, I mean, it's one of those phrases that could be taken as somewhat innocuous or referring specifically to the incident at the hospital. And as I read it, I considered that as a possibility. But given the entirety of the circumstances and the fact that, I mean, it's a phrase that, you know, I think on its face does not require specific reading, means that in the summary judgment context in which Mr. Smith is entitled to all reasonable inferences, respecting your perspective on that, I do think there are other reasonable readings, especially in light of the summary judgment standard. So in our briefing, we address this as essentially two issues, but I think you can parse that out into three. The summary judgment aspect of it, first off, there are two aspects of that. So obviously, most of our briefing concentrates on the record as a whole and what suggests that there was deliberate indifference, and specifically the issue of knowledge because that's where the claim failed in front of the district court. But also, we submit that there is a black letter problem of summary judgment jurisprudence in which the moving party, in this case the defendants, are obliged to establish that there is a lack of a genuine issue of material fact. And in Farmer v. Brennan, the Supreme Court stated very clearly that the knowledge of the correctional officer is a question of fact. So if it's a question of fact, it was their obligation to come forth with evidence that showed that there was no genuine issue of material fact on it. Now, I don't buy that. I think that's the problem is there are ways in which you could prove that an officer has subjective knowledge. And one is, for instance, if there was a policy at the jail that when you guard a prisoner, you have to read all the prior disciplinary history in the file before you do it. Or if the guard was involved in some prior incident involving Mr. Anderson, in which case he would know, obviously, be attributed with that knowledge. But here we actually have, from what I can tell, nothing that affirmatively shows that he had knowledge. I mean, I suppose there's nothing that proves the negative, but maybe I'm wrong. Is there anything that affirmatively shows he had knowledge of that prior disciplinary history? So to some extent that goes to the issue of the appointment of counsel, in which reading this file, and certainly there's a risk. I understand the court's hesitance to issue an opinion that would be seen as endorsing a civil Gideon type rule. And looking at it from a backwards perspective can only take you so far. But I think looking at the record, Your Honors, probably saw several gaps in the proof that would have been ameliorated by the presence of counsel. So I think that specifically goes to, for instance, the fact that he allowed, that the defendants were allowed to submit only a declaration by a stranger to the case, another officer who is not a defendant. He did not specifically state anything about the knowledge of defendants Walker and Golden. He stated that he spoke at most to an institutional knowledge in a broad sense, but he didn't specifically disclaim that they knew that this man was dangerous. And so given that there's a fairly low hurdle for defendants to clear in these sorts of cases, they didn't even clear that. And to this point of appointment of counsel, your client filed several motions for appointment of counsel throughout the course of this case, correct? Yes, Your Honor. At what point do you think the magistrate judge, the district court, had sufficient information about the possible merit to his case and his inability to handle it on his own? A lot of the motions are kind of repetitive, and I just wonder, in your view, when was that point where the district court should have said, yeah, this one needs legal counsel to proceed? There was an issue, and I raised this in my brief, there was an issue with a motion to compel, and I don't think that was specifically an appointment of counsel motion, but there was an issue with the motion to compel that did show a lack of confidence by Mr. Smith in terms of getting the discovery he wanted. I do agree that the motions themselves kind of read similarly to each other, and I'd say generally the totality of the circumstances of the case, the fact that he was held in one state seeking relief in another state, the nature of the offense, obviously these cases are often violent, but this level of violence, this type of violence, kind of is heightened in some ways to perhaps make it even more difficult. So I wouldn't say that there's a specific turning point in the motions, but I'd say it's supported by the record as a whole as well as that discovery issue. Just to follow up briefly on that, because I'm hearing your point, which is now that we're looking at this case, we're seeing what's missing. Nothing from the named defendant, the affidavit from somebody who wasn't there. There's just some gaps in sort of we don't know. You can't answer Judge Strauss' questions very well because it's not in the record. Not very well, but there's nothing really substantive to come back with. So there is that problem, and you've sort of highlighted this issue of backward looking. Oh, we should have done it. So that's why I'm just trying to kind of find that spot where you think the district court should have sort of been aware. Why is this case the case where it's not just simply backward looking, but boy, you should have had some heads up at least at this point of the case. And that's kind of what I'm trying to get at. How do we distinguish this case from so many others? Yes, Your Honor. And again, I would refer back to the motions themselves. This is an abusive discretion standard. That doesn't mean everything goes. And the court wisely set forth factors by which courts can determine whether counsel is appropriate. And so our position is that as a whole, those issues were satisfied by what Mr. Smith set forth in his motions. I want to go back just really briefly about Sergeant Golden's knowledge or, you know, here's what it looks like. He has some supervisory capacity. He's able to say where the person should be put in a cell. Yes, Your Honor. The county's small. I mean, Miller County's 42,000 people. How big is this jail? The jail population can't be huge. Do you know how big the jail is and what the average daily population is? I do not know that, Your Honor. It's not in the record because there is no record, as we know. It's been poorly developed as a guy without a lawyer. But I'm sitting here as a guy who presided in a lot of counties that were about this size, and I keep looking at it and saying, it just doesn't seem humanly possible that Sergeant Golden was unaware of this man's violent propensities, of this man's disciplinary history, of this man's reasons for being incarcerated. Now, I'm looking at the guy who's the warden. Yeah, he's more removed. But the guy who's on the day-to-day floor management, is it even possible that he doesn't know who this person is and what his history is? Our position is that it would be that it's hard to believe that he would not be. This is, again, the nature of his crime. I mean, you speak to it being a smaller town. Someone in jail for raping a four-year-old relative is someone who, even at the outset, were not working in the criminal justice system, you would probably know that story happened. Working in the criminal justice system in a jail, in a supervisory capacity at the jail, he would have some knowledge about this individual. Certainly, throughout, looking at his disciplinary history, he's involved in something reasonably serious, including a fight early on and a bunch of insubordination and conflicts with fellow inmates that appeared over the course of several months leading up to the attack. There are the supervisory shift reports that Mr. Smith submitted. There are several signed by what appears to be a D. Golden. Whether that's Robbie Golden or not, I'm not really sure. But those reports are signed by corporals and sergeants. Mr. Eppley Golden was a sergeant. So one of the fields in those reports was for incidents and disciplinaries that occurred on the shift. So it's, in a sense, reason that he would have had exposure. And again, we don't have specifically in the record another thing that he might have looked for was whether he was a shift supervisor or on the shifts when he got those disciplinaries. We don't specifically have that. Can I ask just one additional question? But we'd have to speculate. I don't know that I got an answer to my previous question, but it sounds like there's nothing actually in the record showing knowledge, right? I just want to be clear about that because you said he needs counsel, but I don't know that you ever answered the question. So a lot of the authorities cited by the district court and by the appellees basically are cases where their deliberate indifference is the standard, but the thrust of it is basically a passive deliberate indifference, i.e., someone hurt me, they should have known, they didn't do anything. In this case, there is at least some suggestion of affirmative misconduct by Golden in that telling him he effed up in a threatening manner. No, I mean about the knowledge, like the knowledge of Anderson's disciplinary history. I just want to pin this down. There's nothing in the record that shows that he had knowledge. We'd have to do what Judge Erickson suggests, which I think would require a little bit of speculation that it was small enough where he should have known or could have known. Right, and so I suppose I was going to stand on the inference of his conduct. But, yes, in terms of on December 12, 2020, Defendant Golden read a report on inmate Anderson. I don't see anything in the record to that effect.  Yes, Your Honor. Thanks, Your Honors. Thank you. Ms. Young. Thank you, Your Honors. May it please the Court, I'm Kim Young on behalf of the appellees. While the Due Process Clause of the 14th Amendment does impose a duty to protect pretrial detainees from the kind of violence that unfortunately occurred in this case, we also know that prison officials and jail officials do not commit a constitutional violation every time one inmate attacks another, and that to prevail on a failure to protect claim, a plaintiff must show first an objective component, that there was a substantial risk of harm to the inmate, and then also the subjective component that this appeal focuses on, and that is that the prison official was deliberately indifferent to that risk. The subjective component requires plaintiff to prove the official both knew of and disregarded an excessive risk of inmate health or safety. As to the disregarding, isn't it a fact dispute as to whether there was another cell that was open that was available for Mr. Smith to go in as a single cell? There is testimony by Mr. Smith that after this event happened, he asked Sergeant Golden why he couldn't have been put in another cell, and his testimony was that Sergeant Golden told him there was not another one available. But Smith said he saw one that was available, correct? He did say that. In this administrative segregation unit, they are out of their cells for very limited points of time during the day, and so I think it's fair to say that he wouldn't have had a lot of opportunity to observe the other cells, but he did say that at one point he saw that that cell was empty. There's nothing in the record that would say necessarily if it was functional or otherwise available. But yes, Your Honor, that fact is in the record. So I think it's helpful to look at how the courts have defined deliberate indifference. Before you go there, I just want to ask about the objective component. I don't understand you to be arguing that there was not an objective fear of harm or whatever, that the only thing at issue really was Sergeant Golden's subjective knowledge. Am I right about that? That's correct. Okay. That's correct. So in the Farmer case that's cited in our brief, the Supreme Court case from 1994, the court defines deliberate indifference, and they kind of do so by first saying what it's not. They say on the one hand it's something more than negligence, so it's not simply negligence or even gross negligence. On the other hand, you can prove it with something less than an act or omission that's done with the very purpose of causing harm or with the knowledge that harm will result. And so what's left in this middle ground is reckless disregard. And the court in Farmer described it as being akin to criminal recklessness in that it is judged subjectively. So the official must both be aware of the facts from which the inference could be drawn, that a substantial risk of serious harm exists, and he must also draw that inference. If the argument is that the official failed to alleviate a risk that he should have perceived but did not, that's not enough to constitute deliberate indifference because it would just be negligence. The appellant argues in their brief, can't we meet this burden with circumstantial evidence? And so I think it's helpful to look at what that same Farmer case describes as what is an example of a case like this, a 1983 claim, when a plaintiff can meet their burden of proof with circumstantial evidence. And there the court said one example would be if there's evidence that a substantial risk of inmate attacks was longstanding, was pervasive, was well-documented, was expressly noted. And even if you had those facts, you also have to prove that these defendants were exposed to those specific facts. And in this case, we don't have many facts. We don't have much information. And I guess that leads me to the motion for appointment of counsel. At least looking back on this case, on how it developed and sort of the questions that the panel's been asking about what's there, what have you got, we don't even have anything from the sergeant. Doesn't this feel like a case that at a minimum needed some assistance from legal counsel to just get the basics of what's needed to litigate a case? I have to respectfully disagree on that for this reason. The case that we cite in our brief on this issue looked at a case with very similar facts to the case that we have here. And they looked at the fact that the plaintiff had been able to successfully file the complaints that made cognizable claims, that he had successfully filed motions to compel discovery and been successful in those, that he had filed a response to the summary judgment motion, and that he, despite comments about accessibility, he had filed over 30 documents. And yet each case has to be different, right? And I appreciate that response in the sense that there are filings by Mr. Smith and he's able to file motions to compel, he's got the complaint, but the complaint just gets him in the door. So he's been able to articulate a claim that passes the initial stages of the proceedings. And I just wonder if in this particular case, we always have to look at each case individually, just as we do with the claims, I think, in this motion. Here we just have gaps. And even if he was able to file some motions, there are clear deficits here. Would you agree in terms of evidence, or at least seeking evidence? I would agree that he lost his summary judgment motion and that that was the correct result. And that the reason he lost it was due to a lack of evidence. But I would not agree that that was indicative of the district court abusing its discretion on ruling on each of those motions that were before them. Have you ever defended one of these cases where the named defendant was not deposed or didn't have an affidavit or requested interrogatories of? We have others that are pending that have a similar procedural history of this one. And they're all pro se, right? They are. No lawyer would do this, right? In any world in which anyone who was even marginally educated on the law, they would say, well, at a minimum, we want to depose that guy. And because I'm pro se, I lack the financial resources to do that, I want some interrogatories answered, right? That would always happen. And so we have here where the case fails basically because the record's completely undeveloped. And it may fail anyhow because it may turn out there is no evidence. There may be no there there. But at this point, you really can't say because there's just huge gaps in this record. I would agree, Your Honor, that any attorney working on this case, you would expect them to depose the named defendants. I would agree with that. However, the district court made it a point to note how thorough the response was and that the plaintiff was able to attach, I believe it's eight different exhibits, but they include this disciplinary history, include his own affidavit. These are the types of support for a summary judgment response that the cases in our brief have recognized as demonstrating competency to defend or prosecute the case on their own. And so I would argue that particularly under the abuse of discretion standard, that with what was before the court at the time that these motions were filed, that the court acted within its discretion in denying the motion. And in part for one of the reasons that's been mentioned in that this specific need that is maybe being identified in hindsight was not brought forward in the motions themselves. That it was more just a recitation of what the factors should be considered on this type of motion and then a conclusion that the motion should be granted. And so under that abuse of discretion standard, we believe that the court should be affirmed on that. Unless there are any other questions, I think my time is about over. Thank you. Thank you. Mr. Kearney, we asked you several questions at the end. We'll give you a couple minutes if you would like rebuttal. First, just to revisit the court's question about when was there a notice. And again, these motions do tend to run together. But in docket number 43 filed on July 22, for instance, he notes that he's had too many strokes since the filing of the complaint. He has limited to no mobility in his left arm and that leaves him to rely on other prisoners to do his legal work. So there is a physical component, certainly at that point, as well as the other aspects of the case that prevented him from pursuing it the way he did in an appropriate manner. And just to get to, if the court will indulge me, to get to a few points on distinguishing authority, I'd note that and just to emphasize some of the points, he had emphysema and COPD, his assertion was. And in terms of why he was assigned, not only is there the contradiction between his statement that he saw an open cell and Golden's statement that he was, I believe Adams, I forget whom he referenced, but Adams stated that he was placed there essentially merely because it was open, without necessarily asserting that it was the only one open. Golden said that it was the only one open. So those contradict each other and then of course there's Mr. Smith's statement that he saw one that was free. As to some of the other cases cited in the summary judgment order, again, Holden v. Herner, Leo v. Wiles, Jones v. Wallace, Coors v. Norris, those are essentially, again, more along the lines of a passive deliberate indifference and again, where something should have happened, but in this case we have an active role about Golden and placing him in that danger and suggestions that that was his goal. And kind of similarly, Patterson v. Kelly, to the extent that the brief of the appellee is intended to suggest that a surprise attack in and of itself is not actionable, that case speaks to, as many other surprise attack cases do, there was often some conflict, including in this one, some conflict between the prisoners. They decided that the issue was over with and then, and often there was no report of it, and then they were attacked. In this case there wasn't anything that happened between them beforehand that maybe he should have reported to put them on notice. It just happened a few days after being put in the cell. I thank your honors. Thank you. Mr. Kearney, we note that you have been appointed here to represent Mr. Smith on appeal, is that correct? Yes, your honor. And we appreciate your willingness to do that. It's my pleasure. And thank you as well, Ms. Young, for your argument. We thank you both and will take the matter under advisement. Thank you. That's the extent of my business before the court today. May I have the excuse? You may. Thank you.